IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-CR-20080 |
| v. | ) | |
| | ) | |
| TEOTIM CIZMAR, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES OF AMERICA'S RESPONSE TO
DEFENDANT'S SENTENCING COMMENTARY**

The United States of America hereby responds to Defendant Teotim Cizmar's sentencing commentary and submits it's sentencing recommendation, as follows.

**I.      The Defendant's Offense Conduct.[1]**

In June 2017, on the eve of trial, Cizmar pled guilty to four counts of Sexual Exploitation of a Child, in violation of Title 18, United States Code, Section 2251(a), involving three minor children, and one count of Possession of Child Pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(b). D.E. 6/23/2017; 6/16/2017 (trial set for 6/27/2017).

It is clear from the letters of support for Cizmar that he led two lives. His public personae was a man of faith and piety, committed to the education of children. R.58.

---

[1] Our citations to the record use the following abbreviations: "D.E." means docket entry or text order; "R." followed by a number refers to the document bearing that number on the district court's docket sheet in this case; references to the transcript of the plea colloquy are to "COP Tr.___", (R.62); "PSR" references the revised presentence report dated April 9, 2018, (R.56); references to sentencing exhibits, tendered to the Court in advance of the sentencing hearing are to "Sent.Ex.".

Cizmar presented himself to his friends and family as a "humble" and "kind" elderly man and "loving" father. But many of the letters indicated a lack of awareness of the charges he pled guilty to in this case. *Id*. Moreover, Cizmar's friends and family have certainly not viewed the evidence in this case and instead rely solely on his misrepresentations of himself and his skewed perception of his culpability. The evidence shows, however, that the defendant's private personae is a manipulative pedophile, who consumes children for his own sexual pleasure.

The evidence demonstrates that Cizmar was an avid collector of child pornography and child erotica and had an extensive collection of both types of images. PSR ¶ 16-17, 19- 26, 29, 33-34.  The government has tendered several sentencing exhibits in advance of the sentencing hearing for this Court's review, including exhibits that contain child pornography that could not be uploaded with this document.[2]  These exhibits show a small sampling of the defendant's collection. Sent. Ex. 1-6, 10-14.  The government's amended exhibit list, prepared for the trial, detailed the over eighty child pornography exhibits that the government would have presented at trial. R.43 (group exhibits 4, 11-17). These too were merely a small sample of Cizmar's collection. Additionally, Cizmar archived his child pornography collection on multiple forms of digital media. PSR ¶ 9-10, 16-17, 19-26, 29, 33.

This vast collection, however, did not satisfy Cizmar and he turned to production.  He used and enticed minor children in his care to capture sexually explicit

---

[2] 18 U.S.C. § 3509(m) prohibits the reproduction of child pornography, but defense counsel, Lawrence Solava, was provided an opportunity to review these exhibits at the U.S. Attorney's Office.

images and videos of their genitalia. PSR ¶ 10, 12, 16, 33. The children he used to produce child pornography were between the ages of three to six years old in these images. PSR ¶ 10, 33.

Despite his obvious influence over the very young children he sexually exploited, Cizmar repeatedly minimizes his conduct and shifts blame from himself to his victims. During his plea colloquy when asked by the Court if he took the picture of the children, Cizmar stated, "Yes. I was asked to. They asked me to." COP Tr. 40. During his evaluation interview with Dr. Miriam Kissin, FMC Devens, on or about January 2018, Cizmar denied responsibility for the offense and asserted his innocence. R.55 at 6; PSR, Addendum ¶ 3(c). In a June 28, 2018, letter to the Court, Cizmar further justified his conduct, stating he had a "legitimate reason for taking" the images. R.65.

But the evidence shows the Cizmar knowingly and willingly filmed these minors, unclothed, and further directed them into unnatural, sexually provocative positions where he could sexually assault them and capture lewd images of their genitals. Sent. Ex. 9. He valued the images he produced, and regularly viewed them. There were numerous copies of the same images throughout his collection, along with photographs of the computer screen he used to view the images. Sent. Ex. 7-8.

**II.    The Defendant's Objections**

The government's position to Cizmar's objections is detailed in the government's sentencing memorandum. R. 60. In response to Cizmar's commentary, the government adds the following:

A. *Double Counting - Paragraphs 63 and 64.*

Cizmar argues that the PSR impermissibly increased his offense level both for the age of the minor involved (under 12) and because he sexually assaulted the minor. Def. Br. 1-2. However, the sexual act enhancement under USSG § 2G2.1(b)(2)(A) and the prepubescent enhancement under USSG § 2G2.1(b)(1)(A) "address distinct aspects" of Cizmar's offense conduct, therefore the application of both enhancements does not constitute double counting. *United States v. Schmeilski*, 408 F.3d 917 (7th Cir. 2005). Cizmar produced a video of himself penetrating a four year old child's vagina with his fingers. Sent. Ex. 9. That is clearly a sexual act. And the prepubescent enhancement is equally appropriate here where the minor was not only under 18, but well under the age of 12, further distinguishing this offender from others who did not sexually abuse and exploit such a young child.

Cizmar asks this Court to ignore Seventh Circuit precedent yet cites no contrary authority to persuade this Court to do so. Instead, Cizmar argues that the sexual assault of the minor is encompassed in the elements of the charge he pled guilty to. Def. Br. 1-2. He is mistaken. The elements of sexual exploitation of a minor refer to the defendant causing the minor to engage in sexually explicit conduct, which need not include a sexual act perpetrated by the defendant on the minor. *Pattern Criminal Jury Instructions Of The Seventh Circuit (2012 Ed.) Instruction for* 18 U.S.C. § 2251(a). Indeed, sexually explicit conduct encompasses both the lascivious exhibition of the genitals or pubic area of any person or an act of masturbation, neither which requires the sexual assault of the minor. 18 U.S.C. § 2256(2)(A)(iii) and (v). Therefore, the application of both the

4

prepubescent enhancement and the sexual act enhancement is appropriate in this case.

  B.  *Acceptance of Responsibility – Paragraph 85*

"Acceptance of responsibility means that 'the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct.'" *United States v. Beserra*, 967 F.2d 254, 255 (7th Cir. 1992)(quoting U.S.S.G. § 3E1.1(a)). There is no indication that Cizmar has done so. Instead, Cizmar has repeatedly professed his innocence, minimized his conduct, and blamed his victims, mere toddlers, for his crimes. COP Tr. 40; R.55 at 6; PSR, Addendum ¶ 3(c); R.65.

Cizmar argues that the government and probation did not initially object to the defendant's acceptance of responsibility in the initial presentence report. Def. Br. 2. However, the government did not have the opportunity to view and object to the initial report until it was filed and released to both parties.

While the government acknowledges that Cizmar pled guilty, doing so on the eve of trial, coupled with his protestation of his innocence, demonstrates that Cizmar has not truly accepted responsibility for his conduct.[3]

  **III.  The Sentencing Guidelines and Factors.**

In determining a sentence, the court should calculate the accurate advisory guidelines range, and consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

---

[3] In addition, Cizmar tried to withdraw his guilty plea arguing that it was not knowing or voluntarily made. R.67. The Court (Bruce, J.) denied his motion, finding that his motion directly contradicted Cizmar's sworn assurances to the Court. R.69

(2) the need for the sentence imposed:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for:

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines …

(5) any pertinent policy statement:

> (A) issued by the Sentencing Commission …

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### A. The Sentencing Guidelines are constitutional.

The Constitution gives Congress the authority to set criminal penalties under Article I, Section 8. "Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, 488 U.S. 361, 363 (1989).

The Supreme Court in *United States v. Kimbrough,* 552 U.S. 85, 128 S.Ct. 558 (2007), reaffirmed Congress's ability to directly mandate sentencing guidelines to the Commission. *Id.* at 96. The Supreme Court thus left undisturbed the bedrock principle that when Congress directs "sentencing practices in express terms," those congressionally authorized instructions provide the sentencing framework. *See Id.* at 103.

### B. The Court Need Not Address Blanket Attacks Against Sentencing Guideline Policy To Sentence Cizmar.

A sentence within a properly calculated guidelines range is presumptively reasonable. *United States v. Adams*, 879 F.3d 826, 829 (7th Cir. 2018). A sentencing court is "perfectly entitled to accept the penal philosophy embodied in the current [child-pornography] guideline and was not obligated to explain why she chose to do so." *United States v. Schmitz,* 717 F.3d 536, 542 (7th Cir. 2013). The Seventh Circuit has expressed its frustration with defendants who shift the purpose of a sentencing hearing from the defendant's conduct to the history of the sentencing guidelines, stating that it does "not think a judge is required to consider . . . an argument that a guideline is unworthy of application in any case because it was promulgated without adequate deliberation." *United States v. Aguilar-Huerta*, 576 F.3d 365, 367 (7th Cir. 2009). The Court "should not have to delve into the history of a guideline so that [the Court] can satisfy [itself] that the process … was adequate to produce a good guideline." *Id*. Since this Court is "*required* to begin the sentencing process by correctly calculating the Guidelines range—[this Court] need not even *consider*" such "blanket attack[s]" against the

7

Guidelines' policy. *United States v. Hancock*, 825 F.3d 340, 344 (7th Cir. 2016) (emphasis in original).

Sentencing courts certainly have discretion to express a policy disagreement with guidelines based on an individualized characteristics determination, and to vary their sentence from the recommended range on that basis. *See, e.g.*, *United States v. Price*, 775 F.3d 828, 840 (7th Cir. 2014) ("the district court's sentencing discretion includes the option to vary from the guidelines 'based on a *policy* disagreement with them'") (emphasis in original). Likewise, while a Court "*may* disagree with the Guidelines' policies and impose a lower sentence, it is not true that they *must*." *United States v. Oberg*, 877 F.3d 261, 264 (7th Cir. 2017) (emphasis in original) (internal citation omitted) (upholding the court's discretion to impose a 360-month within-guidelines sentence).

Nonetheless, the Court need not vary downward here, particularly if the Court's goal is to avoid an unwarranted sentencing disparity. *United States v. Henshaw*, 880 F.3d 392, 398 (7th Cir. 2018) (reiterating a goal of the Sentencing Commission is avoiding unwarranted disparities "in how different judges treat equivalent offenses and offenders.") (internal citations omitted). "Sentencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly. That was the main goal of the Sentencing Reform Act. The more out-of-range sentences that judges impose . . ., the more disparity there will be. A sentence within a properly ascertained range therefore cannot be treated as unreasonable by reference to § 3553(a)(6)." *United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008) (internal citation omitted).

### C. The Sentencing Hearing Should Not Be A Trial Of The Validity Of The Guidelines.

This Court should decline Cizmar's invitation to shift focus away from his conduct and instead hold a trial of the child pornography sentencing guidelines. The Seventh Circuit has specifically distinguished the Second Circuit's rationale in *Dorvee*, stating that "it is ultimately for Congress and the Commission to consider these concerns . . . Unlike the Second Circuit, we apply a presumption of reasonableness to a within-guideline sentence, and it is up to the defendant to overcome this presumption." *United States v. Mantanes*, 632 F.3d 372 (7th Cir. 2011) *(internal citation omitted)* (distinguishing *United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010)).

In upholding a guideline sentence from this district, the Seventh Circuit stated, "we have repeatedly rejected challenges to sentencing based solely on policy disagreements with the child pornography guidelines." *United States v. Freeman*, 415 Fed.Appx. 721 (7th Cir. 2011)(internal citations omitted). The Court of Appeals reiterated that "any ultimate solution is the responsibility of Congress and the Sentencing Commission, not the courts." *Id.; See also United States v. Garthus*, 652 F.3d 715, 722 (7th Cir. 2011) (holding that a policy argument "is more properly addressed to the Sentencing Commission, or to Congress, which has greatly influenced the child pornography guidelines, that to an individual district judge in a sentencing hearing . . . A sentencing judge is not required to 'delve into the history of a guideline' in order to satisfy himself that the 'process that produced it was adequate.'") So too, here. This Court's focus should be on Cizmar's conduct and on an individualized determination of

9

the appropriate sentence to meet the factors outlined in § 3553(a), not a pseudo-Congressional hearing challenging guidelines policy and history.

### D. Cizmar Is A Producer, Not A Possessor.

The majority of Cizmar's constitutional arguments and legal analysis appear to stem from a criticism of child pornography trafficking guidelines under § 2G2.2, however, Cizmar's conduct is properly driven by the sexual exploitation guidelines under § 2G2.1.[4] In other words, Cizmar advocates for a below-guideline sentence in this case predicated on the alleged flaws of a guideline that is wholly irrelevant. Cizmar's entire policy disagreement is misplaced.

The biggest drivers of the defendant's guideline range do not come from the child pornography guidelines at all. The defendant's sentencing guideline range was increased by 5 levels because he was a repeat and dangerous sex offender (USSG § 4B1.5(b)), and by 4 levels through the multiple count adjustment (USSG § 3D1.4). PSR 82, 84. Therefore, 9 levels of the defendant's sentence derive from non-child pornography guidelines. In other words, even if the child pornography guidelines were revised to produce a recommended guideline level of 34 (the lowest possible level for the 15-year mandatory minimum), once the other enhancements were applied, the total offense level would still be 43, with a recommended guideline range of life.

---

[4] Cizmar references a survey of District Judges from 2010 in support of his argument that the guideline range for "possession of child pornography was too high." Def. Br.6. This survey, identified as Exhibit A, was not attached to his pleading. The government attempted to obtain a copy from defense counsel, but has not yet received it.

### IV. The Sentencing Position of the United States.

As properly calculated by the Probation Office, Cizmar's guideline range is life. PSR ¶ 116. The statutory ranges on Counts 1 through 4, Sexual Exploitation of a Minor, is a mandatory minimum of 15 years to 30 years imprisonment, on Count 5, Possession of Prepubescent Child Pornography, is up 20 years imprisonment.

#### A. Nature and Circumstances of the Offense.

Cizmar grooms young children and their parents by presenting himself as a man of faith who has dedicated his life to being an educator. Through this manipulation, he earns their trust, gaining unfettered access to their young children. He further corrupts their innocence by directing the children's games toward his perverted sexual desires. Given his premeditated conduct and complete lack of remorse, there is reason to believe that Cizmar will never be rehabilitated and that a sentence that ensures that he will never have access to a child again is the best way to protect the public.

#### B. The Need For The Sentence Imposed To Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense.

The seriousness of this offense cannot be overstated. As discussed previously, Cizmar has affected not only the lives of multiple minors he himself coerced and enticed; he also has caused damage to the victims depicted in the images he collected from the internet. Cizmar's conduct fuels an industry driven by sexual depravity. Like-minded child pornography traffickers seek younger and more violent depictions of child exploitation and abuse daily. The Court's goal in sentencing Cizmar should mirror the guidelines goal to weaken that market. *United States v. Barevich*, 445 F.3d 956, 959

(7th Cir. 2006). ("[t]he overarching goal of the sentencing guideline enhancements is to weaken the market for child pornography.") Young children are raped and degraded in order to enable the production of child pornography that Cizmar downloaded. "The greater the customer demand for child pornography, the more that will be produced." *United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).

His actions evince neither a respect for the law nor any acknowledgment of the serious impact to victims of child sexual abuse and child pornography. A lengthy prison sentence would thus provide just punishment for the offense.

### C. To Afford Adequate Deterrence To Criminal Conduct.

With respect to adequate deterrence to criminal conduct, there are two points to emphasize. First, the defendant does not express any remorse for his crimes. He is, in a word, unrepentant. He exploited the minor victims in the most abhorrent way, and it is evident from his objections and pleadings, that he has no respect for the law, and no understanding of the criminality of his conduct or the negative impact he has had on the victims' lives. He blames the victims for his crimes and even has the audacity to suggest that he was justified in producing sexually graphic videos of minors.

Second, the defendant is a serial predator who targets minor children for his own sexual pleasure. The most effective deterrence to this type of criminal conduct is lengthy imprisonment. Given his refusal to acknowledge his criminal conduct, a life sentence is the only way to convey to the defendant that his offenses are serious and he should respect the law. *See United States v. Kapordelis*, 569 F.3d 1291, 1318 (11th Cir. 2009) (affirming district court's upward variance to the statutory maximum "because it was

unlikely that [the defendant] would be rehabilitated given his attitude and lack of remorse.")[5]

### D. To Protect the Public From Further Crimes of the Defendant and the Policy Statement of the United States Sentencing Commission.

A sentence of life imprisonment is the only reasonable way of protecting the public from further crimes of this child predator. In December 2012, the United States Sentencing Commission published a comprehensive report examining federal sentencing policy in child pornography cases. Federal Child Pornography Offenses, Report to Congress. United States Sentencing Commission (2012), available online at: http://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf, *last visited November 19, 2018*. In its report, the Sentencing Commission detailed key findings relative to production offenses and their impact on the victim. The Commission found, "[c]hild pornography offenses result in substantial and indelible harm to the children who are victimized by both production and non-production offenses." In addition, this Court is obligated to look at additional facts and circumstances to fashion a sentence that more appropriately addresses this particular defendant. The United States submits that the history of defendant's manipulation of vulnerable children is ample justification for a life sentence here.

---

[5] Kapordelis was convicted of production and receipt of child pornography for conduct that took place before April 30, 2003, when the statutory penalties were increased. 569 F.3d at 1299-1305; PROTECT Act, Pub. L. No. 108-21, § 103, 117 Stat. 652-53 (April 30, 2003). Therefore, his sentence of 420 months was the statutory maximum penalty available at the time for his crimes.

Cizmar used and coerced multiple minors for the purpose producing sexually explicit images.

### E. To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Corrective Treatment.

The defendant will receive medical, corrective treatment and sex offender treatment through the Bureau of Prisons.

### F. The Kinds of Sentences Available.

Under the sentencing guidelines range noted in the PSR, the defendant is in "Zone D," which requires the minimum sentence to be served as a term of imprisonment.

### G. The Need to Avoid Unwarranted Sentencing Disparities Among Defendants Found Guilty of Similar Conduct.

The recommended Guidelines sentence of life imprisonment is not an unreasonable sentence, and certainly would not be anomalous to other production convictions in federal court. Indeed, even if this Court sentenced the defendant to the statutory minimum sentence on each count consecutively, to fully account for the distinct harm to each victim and the multiple incidents, the sentence imposed would be a minimum of 60 years. As the table below demonstrates, from Fiscal Year 2008 through 2017, federal judges across the country have sentenced 30 defendants over the age of 50 years who were convicted of production of child pornography offenses to terms of imprisonment of 720 months (60 years) or more.

|   | DISTRICT | DEFENDANT'S NAME | COURT NUMBER | SENTENCE DATE (Yr-Mo-Day) | PRISON TIME (MONTHS) |
|---|---|---|---|---|---|
| 1 | ALN | Bailey, Murry Malone | 13-CR-00149-LSC-JEO-7 | 140219 | 720 |
| 2 | ALS | McGee, Bernard | 10-CR-00162-CG | 110303 | LIFE |
| 3 | ARW | Bates, Roger | 12-CR-20010 | 121221 | 720 |
| 4 | ARW | Hanna, James | 12-CR-50073 | 130708 | 720 |
| 5 | CAE | Harrod, Allen | 03-CR-00384-S | 90427 | LIFE |
| 6 | CAE | LaBrecque, Michael | 03-CR-00384-S | 90427 | LIFE |
| 7 | CAE | Hernandez-Velazquez, Jose | 11-CR-00134-F | 130417 | 720 |
| 8 | CO | Wolf, Mervin Edy | 14-CR-00107 | 141125 | 720 |
| 9 | CT | Sensi, Edgardo M. | 08-CR-00253 | 120209 | 1020 |
| 10 | DE | Pavulak, Paul E. | 09-CR-00043-SLR | 111014 | LIFE |
| 11 | FLM | Matthews, Samuel | 8:07-CR-247-T | 71030 | LIFE |
| 12 | IAN | Stong, Benton | 13-CR-02014 | 140204 | 1320 |
| 13 | ID | Wilkinson, William Roger | 14-CR-00168-S-BLW | 160404 | 1560 |
| 14 | ILC | Hendricks, Jerry L. | 12-CR-20025 | 140630 | LIFE |
| 15 | INS | Metzger, David | 09-CR-00188-LJM/KPF1 | 100525 | 2820 |
| 16 | INS | Rarey, Rickie | 1:09-CR-130-M/F | 100224 | LIFE |
| 17 | KS | Grigsby, Philip | 12-CR-10174-JTM | 130605 | 3120 |
| 18 | LAW | Lolley, Curtis | 09-CR-00339 | 100827 | 720 |
| 19 | MIE | Frazee, James | 10-CR-20082 | 100909 | LIFE |
| 20 | MIE | Pierce, Michael | 16-CR-20192 | 170925 | 1080 |
| 21 | MOW | Hajny, James | 14-CR-05022-01 | 161215 | 1200 |
| 22 | MT | Threadgill, Kenneth | CR 07-89-GF-SEH | 80116 | 1020 |
| 23 | NYN | Rood, Flay | 10-CR-00149 | 111007 | LIFE |
| 24 | NYN | Sacco, Dean | 08-CR-00077 | 90303 | LIFE |
| 25 | NYN | McCoy, Robert | 14-CR-00291 | 160321 | 960 |
| 26 | NYN | McLaughlin, Robert V. | 14-CR-00320 | 150510 | 720 |
| 27 | NYW | Tyson, Joseph M. | 06-CR-06127CJS | 81112 | 780 |
| 28 | TNE | Becker, David Aaron | 3:07-CR-22 | 71026 | LIFE |
| 29 | TNM | Green, Daniel W. | 10-CR-00098 | 150623 | 960 |
| 30 | TXN | Williams, Kelly Dan Jr. | 15-CR-00169-Y-FW | 160526 | 720 |

In a similar case, *United States v. Russell*, the Seventh Circuit held that a sentence of 38 years imprisonment for production of child pornography was substantively

reasonable. 662 F.3d 831, 854 (7th Cir. 2011). The defendant there faced a guideline range of life imprisonment and statutory maximum of 120 years. *Id.* at 853. In *Russell*, the defendant suggested, as Cizmar does here, that the statutory minimum prison term of 15 years would be a more reasonable sentence. *Id.* at 852. The Seventh Circuit rejected this argument, stating "even if we assume for the sake of argument that a sentence *so far below the life term recommended by the Guidelines could be thought of as reasonable in this case*, the district court certainly did not abuse its discretion in concluding otherwise. Russell's crimes, in the district court's words, reflected 'exceedingly grave exploitative behavior.'" *Id*. at 854 (emphasis added).

      Notably, the facts in *Russell* are strikingly similar to this case. In *Russell*, all of the images produced by the defendant depict the lascivious exhibition of the genitals of his two daughters, the images were circulated on the internet, and the defendant sexually molested one daughter. *Id*. at 834, 853. The defendant's defense at trial was that the images were "art," not pornography. *Id*. at 845, 848-49. The defendant cited several mitigating factors to warrant a deviation from the recommended guidelines sentence, none of which the court found to be persuasive: "His college education, job skills, age, marital status, and lack of history of drug abuse are neither remarkable nor so compelling as to call into question the reasonableness of a below-Guidelines sentence. Russell committed his offenses despite these advantages, and although his positive attributes may distinguish him to some degree from others who commit similar offenses, they are not so extraordinary as to compel a lesser sentence than the one the court imposed." *Id.* at 854 (citation omitted). There was even the same question about

16

the defendant's remorse, as the Seventh Circuit noted that "Russell expressed remorse for his acts, but only after being found guilty. Even then, the district court detected a certain 'disconnect' between Russell's own perception of what he did and what the evidence revealed about his criminal acts." *Id.*[7] *Cf. Noel*, 581 F.3d at 500–01 (affirming an eighty-year sentence for nude photographs of sleeping minor).

Indeed, in cases where the sentencing court specifically found that a child pornography producer (not distributor or possessor) was also a repeat child sex offender pursuant to § 4B1.5, most if not all courts imposed sentences at the statutory maximum sentence or close to the guideline range. *See, e.g., Oberg*, 877 F.3d at 263 (absent the statutory maximum, the guideline sentence would have been life imprisonment on each count, given an adjusted offense level of 43 and criminal history category of I, the district court sentenced the defendant to a 30–year statutory maximum on each count under § 2251(e), to be served concurrently); *United States v. Craig,* 420 Fed.Appx. 605, 606, 2011 WL 1740145, 1 (7th Cir. 2011) (same); *United States v. Eckstrom*, 626 F. App'x 640, 642 (7th Cir. 2015) (the recommended guideline range was life, the district court imposed a sentence of consecutive maximum terms of imprisonment on seven counts of producing child pornography, totaling 2,880 months (240 years); *United States v. Young,* 424 Fed.Appx. 570, 571, 2011 WL 2938078, at *1 (7th Cir. 2011) (the guidelines imprisonment range calculated to be 292 to 365 months, and the district court sentenced the defendant to 300 months); *United States v. Wheaton* 358 Fed.Appx.

---

[7] Although the district court in Russell technically imposed a below-guideline sentence, the Seventh Circuit found that the court had effectively imposed a life sentence. 662 F.3d at 853.

742, 745, 2010 WL 21463, *2 (7th Cir. 2010) (the guideline range was life imprisonment, a sentence that the district court considered "a real possibility." Wheaton "caught a break when she pleaded guilty to only one count"; the district court sentenced the defendant to the 30-year statutory maximum); *United States v. Blum,* 534 F.3d 608, 609 (7th Cir. 2008) (the district court sentenced defendant to 60 years in prison); *United States v. Shippy,* 401 Fed.Appx. 116, 118, 2010 WL 4780563, at *1 (7th Cir. 2010) (the applicable guidelines range was 360 months to life imprisonment, the district court sentenced the defendant to 40 years imprisonment); *United States v. Eyster*, 386 Fed.Appx. 180, 183, 2010 WL 2764578, 2 (3rd Cir. 2010) (defendant sentenced to 840 months imprisonment); *United States v. Bastian,* 603 F.3d 460, 463 (8th Cir. 2010) (the defendant was sentenced to 600 months imprisonment); *United States v. Sarras*, 575 F.3d 1191, 1209 (11th Cir. 2009) (the court sentenced the defendant to 1,200 months imprisonment); *United States v. Ferguson*, 560 F.3d 1060, 1061 (9th Cir. 2009) (the court sentenced the defendant to the statutory maximum of 480 months imprisonment); *but see Price*, 775 F.3d at 841 (upholding the district court's discretion to impose a sentence of eighteen years, which was "a substantial variance from the recommended 40–year term.")

V.  **CONCLUSION**

Therefore, the United States urges this Court to adopt the Guidelines as calculated, sentence Cizmar to the statutory maximum on each count, and run all five counts consecutively. Such a sentence would be procedurally reasonable as calculated

18

under § 5G1.2(d), and substantively reasonable based upon Cizmar's lengthy history of sexually abusing and exploiting children who are in his care.

        Respectfully submitted,

        JOHN C. MILHISER
        UNITED STATES ATTORNEY

By:    *s/ Elly M. Peirson*
       Elly M. Peirson, Bar No. IL 6298075
       Assistant United States Attorney
       201 South Vine Street, Suite 226
       Urbana, Illinois 61802
       Telephone: (217) 373-5875
       Fax:  (217) 373-5891
       elly.peirson@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2018, I electronically filed the forgoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record.

*s/ Elly M. Peirson*
Elly M. Peirson, Bar No. IL 6298075
Assistant United States Attorney
201 South Vine Street, Suite 226
Urbana, Illinois 61802
Telephone: (217) 373-5875
Fax:  (217) 373-5891
elly.peirson@usdoj.gov